[Civ. No. 4471. Third Appellate District.—January 15, 1932.]

VAH DAH DUNSHEE, Respondent, v. EVELYNE B. BOADWAY, Appellant.

Merriam, Rinehart & Merriam and Harvey M. Parker for Appellant.

Harry W. Ticknor and Roland Maxwell for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a judgment rescinding an exchange of properties on the ground of fraud consisting of a misrepresentation of the value of an apartment house.

The plaintiff had been a resident of Honolulu until shortly before the exchange of properties which is involved in this suit. She had no previous experience in the apartment house business. She moved to Pasadena and purchased a home, which is situated on Hill Street in that city. This dwelling-house and furnishings were worth about $35,000. In May, 1927, she listed this property for sale with the defendant, The William Wilson Company, a realty corporation of Pasadena. This company was also the agent for the appellant, Evelyne B. Boadway, in the exchange of properties which is here involved.

The appellant owned the Beverly Apartments situated in the San Pasqual Tract in South Pasadena. She had owned and operated this property for several years. It was also listed for sale or exchange with the above-mentioned realty company. Mr. Plank, acting as salesman for The William Wilson Company, negotiated with the respondent with the object of selling her the Beverly Apartments or procuring an exchange of properties. An exchange of these apartments for the respondent's home on Hill Street was consummated October 14, 1927. The respondent took possession of the apartments November 1st. The exchange of properties was made on the basis of a valuation of the apartment house and its furnishings, estimated at the sum of $96,000, which were subject to an encumbrance of $45,000. The respondent's Hill Street dwelling was accepted at a valuation of $35,000. The balance of the purchase price of Beverly Apartments was paid by the respondent in cash and securities.

After operating the apartments for several months the respondent became convinced she had been defrauded. She was greatly disappointed in the receipts from the business. In an effort to refinance the encumbrance on the property, about May 1, 1928, she discovered that the apartments were valued at only approximately $60,000. For the first time she then made an independent investigation and discovered that the value of the property had been grossly misrepresented to her. She then consulted an attorney, and on May 17, 1928, commenced proceedings to rescind the exchange of properties.

The complaint alleges that the agents of appellant falsely represented to the respondent that the Beverly Apartments

and furnishings were worth not less than $98,000; that a net income of fourteen per cent, estimated on a valuation of $110,000, was realized from the property; that the apartments rented for $1400 a month, and in the winter-time produced an income of $1900 a month; that the building was in good repair; that the apartments bore a good reputation; that the property could be resold for $130,000, and that each of these representations was false and was made with intent to defraud the plaintiff. It was then alleged the plaintiff was without experience in the apartment house business; that she had no knowledge of the value of property in Pasadena, and that relying upon these representations as true, she was persuaded to, and did exchange properties to her great damage. It was asserted she did not discover the fraud until May 1, 1928, and thereupon immediately served the defendants with notice of rescission. The material allegations of the complaint were controverted. Judgment was rendered in favor of the plaintiff.

The court adopted findings favorable to the defendants upon all of the specifications of fraud except that which charges the defendants with misrepresentations regarding the value of the property. Upon this issue the court found that the defendants fraudulently represented the property to be worth $110,000, and that the lowest market value thereof was $98,000; that these statements were made as declarations of fact with intent to deceive the plaintiff and not as mere expressions of opinion; that the plaintiff was deceived thereby and defrauded of her property; that the actual value of the property did not exceed the sum of $75,000, and that the plaintiff did not discover the fraud until May 1, 1928, when she promptly rescinded the exchange. A decree of rescission was thereupon rendered. The plaintiff was awarded a judgment for the sum of $12,901.67, representing her loss of the rental value of the Beverly Apartments from the date of exchange to the time of the entry of the decree. The judgment also requires the defendant Boadway to return 100 shares of the capital stock of the Standard Oil Company, which were transferred to the defendant as part purchase price of the apartments, and upon failure to return the stock, in lieu thereof the plaintiff is awarded the further sum of $7,549, which was

the market value of the stock. From this judgment Evelyne B. Boadway has appealed.

The appellant contends that the findings of fraud are not sustained by the evidence; that the representations regarding the value of the property were mere expressions of opinion, which do not furnish grounds for rescission; that the plaintiff had ample opportunity for an independent investigation regarding the value of the property, and that she may, therefore, not rely on the alleged exaggerated value thereof; that plaintiff did not, in fact, rely on these representations of value, and that she failed to act with due diligence in her effort to rescind the exchange of properties.

There is ample evidence to sustain the findings of fraudulent misrepresentations regarding the value of the Beverly Apartments. The valuation of the property was grossly exaggerated. The plaintiff testified that Mr. Plank, the salesman for The William Wilson Company, told her that Beverly Apartments were listed with them at a valuation of $135,000; that they were worth $110,000, but that he could sell the property to her for $98,000, which was the lowest cash price, and not a trading valuation. He told her his firm had been in the realty business for thirty-five years and could be relied upon. Mr. Ticknor testified that Mr. Plank, in the presence of the plaintiff, told him, "he was getting the Beverly Apartments [for the plaintiff] for $98,000, that it was worth $110,000. He said it was a wonderful deal." The defendant, Boadway, also made similar statements to the plaintiff. From an entire reading of the record it seems quite evident these representations regarding the value of the property were not made as mere expressions of opinion, but, upon the contrary, they were made as positive assertions of fact for the purpose of deceiving the purchaser. The plaintiff had resided in Pasadena but a brief period of time. She had just come from Honolulu. She was inexperienced in the apartment house business, and was not acquainted with the value of properties in Pasadena. She made no independent investigation of the value of property. In fact, she appears to have been dissuaded from doing so. She visited the apartments prior to the purchase on only one occasion, and then merely

made a superficial inspection of some of the rooms. She testified in this regard: "She (Mrs. Boadway) showed us first apartment [number] 2. We just had a casual look through that. The curtains were down. The rooms we saw were all dark; we couldn't tell much about them."

The record indicates that Beverly Apartments were worth $21,000 less than the value thereof which was represented by the defendants. The court so found. The plaintiff allowed $96,000 for the property. The court was warranted in finding they were worth not to exceed $75,000. Five qualified witnesses fixed the value at from $58,700 to $60,000. There is evidence to the effect that the defendants were not in good faith in representing to the plaintiff that this property was worth from $98,000 to $110,000. The record refutes the claim that they honestly believed and therefore asserted as a matter of opinion, only, that these last-mentioned figures represented the actual value of the property. Mr. Wilson, the president of the realty firm which negotiated the exchange of properties as the agent of the defendant Boadway, testified that he was familiar with Beverly Apartments and knew its value. He said, in response to interrogatories in the course of his examination as a witness: "Q. You had an opinion on the 30th day of September, 1927, in regard to its reasonable market value, did you not? A. Yes, I did. Q. What was that opinion? A. $82,750." Believing this property was worth only $82,750, the defendants were not warranted in definitely representing to the plaintiff that it was worth $110,000, and not less than $98,000 in cash valuation. ▮ When one possesses the knowledge or belief that property is worth but $82,750, it is inconsistent to assert that it is a mere expression of opinion for him to definitely state that it is actually worth $98,000 to $110,000. Under such circumstances these statements regarding the value of the property are definite assertions of fact, and not mere expressions of opinion. They are evidence of a lack of good faith. The findings of fraudulent misrepresentations of the value of the property are amply supported by the evidence.

▮ It is true the statements of an owner of property regarding its value, when such declarations are expressed in good faith, are usually regarded as mere opinions of its

worth, upon which the purchaser is not ordinarily entitled to rely. (12 R. C. L. 281, sec. 44; 1 Black on Rescission, 2d ed., 214, secs. 79–81; *Lion* v. *McClory*, 106 Cal. 623 [40 Pac. 12].) ▮ A false statement regarding the value of property, which is not made in good faith, and which is not warranted by the knowledge or belief of the owner, may furnish the basis of an action for rescission on the ground of fraud or deceit. (*Phelps* v. *Grady*, 168 Cal. 73 [141 Pac. 926].) There is a well-recognized exception to the rule that a declaration of the value of property by the owner is usually deemed to be a mere expression of his opinion with respect thereto. The circumstances, manner or form in which the assertion is made may refute the theory that it is offered in good faith as a mere opinion regarding the value. (12 R. C. L. 283, sec. 47; *Crandall* v. *Parks*, 152 Cal. 772 [93 Pac. 1018]; *Dickey* v. *Dunn*, 80 Cal. App. 724 [252 Pac. 770, 772]; *Gammon* v. *Ealey & Thompson*, 97 Cal. App. 452, 459 [275 Pac. 1005]; 2 Pomeroy's Eq. Jur., 4th ed., 1813, sec. 878.) In the authority last cited it is said: "Wherever the statement, although relating to matter of opinion, is the affirmation of a fact, it may be a fraudulent representation. . . . The party himself might be an expert, and their opinion might be material, so that the representation that the opinion was held might be the affirmation of a most material fact. . . . Wherever a party states a matter, which might otherwise be only an opinion, and does not state it *as the mere expression of his own opinion,* but affirms it *as an existing fact* material to the transaction, so that the other party may reasonably treat it as a fact, and rely and act upon it as such, then the statement clearly becomes an affirmation of fact within the meaning of the general rule, and may be a fraudulent misrepresentation."

In the case of *Dickey* v. *Dunn, supra,* the court says: "A statement as to value is not always made as a mere expression of opinion. It may be a positive affirmation of a fact, intended as such by the party making it, and reasonably regarded as such by the party to whom it is made; and when it is such it is like any other representation of fact, and may be a fraudulent representation warranting rescission."

■ Where there is a reasonable doubt as to whether the declaration respecting the value of the property is intended by the owner as a mere expression of opinion, or as a wilful misrepresentation thereof, the problem becomes a question for the determination of the trial court or jury. (*Gammon* v. *Ealey & Thompson, supra; French* v. *Freeman,* 191 Cal. 579 [217 Pac. 515]; *Stockton* v. *Hind,* 51 Cal. App. 131 [196 Pac. 122].) A decision of this question, which is adequately supported by the evidence, may not be disturbed on appeal.

■ It is evident from the record that the plaintiff relied upon the representations made by the defendants regarding the value of the Beverly Apartments. She made no independent investigation respecting its value. In fact, she was dissuaded by the agent of defendants from doing so. The plaintiff testified that Mr. Plank, the salesman of The William Wilson Company, told her in discussing the value of the property, that his company had been in business for thirty-five years and had an excellent reputation and that she could depend upon them to correctly inform her and stand by her in the transaction. She was told that Mr. Ticknor, as a member of the firm of Ticknor, Carter & Webster, had appraised the property and knew its value. She said she told Mr. Plank: "I wanted to see Mr. Ticknor about having the Beverly Apartments appraised, and he told me that he was Mr. Ticknor's appraiser and that it would be very foolish for me to go and call Mr. Ticknor, as Mr. Ticknor would only call him and it would only add to the expense of the affair, . . . that it wasn't necessary to go to Mr. Ticknor or have him appraise it because it would only come right back to him." The plaintiff then told Mr. Plank the only two persons whom she knew in Pasadena were Messrs. Kendall and Curtis, whom she had known in Honolulu. She added, "I would like very much to talk to them." Mr. Plank replied that "they were in the real estate business and would only want to sell you something they had, and would knock this deal. So . . . my advice is not to consult with them, because you are in the hands of The William Wilson Company, who has had thirty-five years' experience, and William Wilson is a reliable man that will take care of you."

■ Where positive statements regarding the value of property are made by the owner, under circumstances which refute the assumption they were intended as mere expressions of opinion, and they are relied upon by the purchaser, it is unnecessary to make an independent investigation of the value of the property, even though the opportunity for so doing exists. (*Teague* v. *Hall,* 171 Cal. 668 [154 Pac. 851]; *Faull* v. *Johnson,* 94 Cal. App. 230 [270 Pac. 993]; *Tracy* v. *Smith,* 175 Cal. 161 [165 Pac. 535].) ■ Where positive statements regarding the value of property are made by the owner as facts and not as mere expressions of opinion, and his acts or conduct result in dissuading the purchaser from making an independent investigation respecting the value, the owner is estopped from relying upon a lack of independent inquiry as a defense in an action for rescission on the ground of fraud. (1 Black on Rescission, 2d ed., 217, sec. 80.) In the text of the authority last cited it is said: "The general rule [that declarations in regard to value will not ordinarily be deemed to constitute fraud which will justify rescission] . . . is subject to several important exceptions. . . . It is a constructive fraud . . . where the party making the representations is an expert judge of values in that particular line, while the other is ignorant of them and especially *if the latter is induced to forbear making inquiries.* . . . If a statement as to value is made by one who knows it to be false or not consonant with the facts, and which is not his real opinion or judgment, and is asserted for the fraudulent purpose of deceiving the other party and inducing him to contract, and which accomplishes that purpose, it is to be treated as a fraudulent misrepresentation."

■ Nor is the plaintiff barred from maintaining his action for rescission by her lack of diligence. Section 1691 of the Civil Code does provide that one who seeks to rescind a transaction must exercise reasonable diligence in doing so. That section provides in part: "He must rescind promptly, upon discovering the facts which entitle him to rescind . . . " It is urged that the plaintiff has waived her right to rescind the exchange of properties since she took possession and operated the Beverly Apartments for a period of some eight months before she complained of the alleged

fraud. It is asserted she should have sooner discovered the valuation of the property from the diminished proceeds of the business. The income from a particular business is only one of the methods of ascertaining its value. It is not always conclusive of the actual value. Local conditions and circumstances may cause a substantial fluctuation of the proceeds of a business. The popularity of the manager of an apartment house may account for its prosperity. A change in the management may temporarily affect the proceeds. The record in the present case shows that the Beverly Apartments prospered best during the winter months. The plaintiff did not take possession of this business until November 1st. She operated the apartments only during the most lucrative months of the business. Her income from this enterprise was nevertheless disappointing. She had been given assurances by the defendants that the business had prospered. She was told the business furnished a very wonderful opportunity for her. It seems perfectly reasonable to assume she would lose faith in the success of the business only gradually. Most men live in hopes and struggle against adverse conditions, expecting success to visit them with the advent of each new day. Her discovery that the real value of the property had been grossly misrepresented to her was the result of a slow process of disillusioning her mind of the effect caused by the positive assertions which were made by the defendants. Moreover, she did not actually learn of the decreased value of the property until about May 1st, when she discovered that the bank had never appraised the property at a sum in excess of $60,000. Within seventeen days thereafter, she served her notice of rescission. Under such circumstances it may not be said one has waived her right of rescission for lack of diligence.

We are therefore of the opinion the evidence of this case amply supports the findings and judgment of rescission on the ground of fraudulent misrepresentation of the value of the property.

The judgment is affirmed.

Preston, J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 13, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 14, 1932.