[Civ. No. 4477. Third Appellate District.—February 20, 1932.]

ANITA SPADONI et al., Respondents, v. ALBERT MAGGENTI et al., Appellants.

Wm. J. Clark and Ernest M. Torchia for Appellants.

Alfred E. Paonessa and Charles A. Ruby for Respondents.

THOMPSON (R. L.), J.—This is an appeal from a judgment rescinding the sale of real estate and personal property and canceling the instruments of conveyance thereof, on the ground of fraud.

The defendants, who sustain the relationship of husband and wife, were the owners of a dwelling-house situated on lots 14 and 16, Ramona tract of the city of Alhambra, according to book 12 of maps, page 53, Los Angeles records, together with the household goods therein contained and one Maxwell coupe automobile. January 27, 1927, the plaintiffs executed a written agreement to purchase this property for the sum of $22,300, subject to a mortgage of $9,000. This sale was consummated February 1, 1927, by the execution and delivery of a deed of conveyance to the real property and bills of sale to the personal property. The plaintiffs took immediate possession of the property. As part of the purchase price therefor the plaintiffs assigned and delivered to the defendants 140 shares of the capital stock of Bancitaly Corporation of the agreed value of $13,300. About August 10, 1927, the plaintiffs claim to have first discovered the serious defects in the dwelling-house and the fraudulent misrepresentations of the defendants with respect to the age, character and quality of this building. In the meantime the defendants had returned to their native country of Italy. A notice of rescission and an offer of restitution were promptly made. The complaint was filed asking to rescind the sale of real and personal property on the ground of fraud and praying for a decree establishing a lien upon the property to secure the repayment of the purchase price therefor. The answer controverts the material issues of the complaint and affirmatively sets up the defense of laches.

The court adopted findings favorable to the plaintiffs on each of the essential issues. A judgment was accordingly rendered rescinding the sale of real and personal property, canceling the conveyances of title thereto, and directing the repayment of the purchase price therefor, including the agreed value of the bank stock. The court also declared a lien upon the property to secure the obligation found to be due. An accounting was ordered to ascertain the exact sums which are due to the respective parties, and a fore-

closure sale of the property was directed to satisfy the debt. From this decree the defendants have appealed.

The appellants contend that the judgment and findings are not supported by the evidence; that there is a fatal variance between the allegations of the complaint and proof thereof; that the plaintiffs are barred by laches from maintaining this action; that the court erred (1) in refusing to grant a continuance of the time set for the trial of the cause, (2) in adopting the report of a referee who was appointed to obtain an accounting between the parties, (3) in failing to adopt findings upon certain alleged material issues, and (4) in failing to grant defendants' motion for a new trial. It is also asserted the plaintiff's attorney was guilty of prejudicial misconduct during the trial of the cause.

A careful examination of the voluminous record in this case satisfies us there is ample evidence to support the findings of fraud. There are contradictions regarding nearly every issue. The plaintiffs are Italians who speak English poorly. They are emotional and apparently ignorant of American ways. Belonging to the same nationality as the defendants, they naturally had greater confidence in them and were therefore more easily deceived by the representations regarding the age and character of the dwelling-house. The defendants authorized one Roy Fazzi, a merchant in the locality of this property to procure a purchaser therefor. Both Fazzi and the defendant Albert Maggenti, represented to the plaintiffs that the dwelling-house was a new and "very wonderful home" which was constructed within the past five years from an Italian design, as a home for the defendants, at a cost of $25,000 or $26,000. There is ample evidence to support the plaintiffs' contention that they bought the property relying upon these representations. The court found that the dwelling-house was an old building more than fifteen years of age which had formerly been a warehouse that was purchased and moved on to the premises and remodeled for speculation purposes. There is ample evidence to sustain these findings. Augusta Jordan testified in that regard, that she bought the old building in 1910 and subsequently sold it to the defendants. She said: "It was in the rear of a house on Marengo avenue. It was a two-story building used as a garage, a tool room and a lumber room." The dwelling contained many defects which

the plaintiffs did not discover until after they moved into the house. It was covered with stucco on the outside and was plastered inside. It presented a fairly modern and attractive appearance. The plaintiffs made a superficial inspection of the house on one occasion in company with the defendant Albert Maggenti. The rooms were dark, the floors were covered with rugs and the walls were hung with pictures. The defects in the structure were therefore not discovered. ■ Under the circumstances of this case we are unable to say the casual inspection of the premises charged the purchasers with knowledge of the defects and barred them from relying upon the positive representations which were made by the defendants regarding the age and character of the building. Even though the purchaser makes a casual inspection of the property, where the defects are concealed from view regarding which deliberate misrepresentations are made, and of which imperfections the purchaser is ignorant, or where artifice is employed by the seller to prevent a full and complete investigation, the purchaser is entitled to rely upon the statements and base an action for rescission upon such misrepresentations when he is defrauded thereby. (*Dow* v. *Swain*, 125 Cal. 674, 683 [58 Pac. 271] ; *Wainscott* v. *Occidental Bldg. & Loan Assn.*, 98 Cal. 253 [33 Pac. 88] ; *Vah Dah Dunshee* v. *Boadway*, 119 Cal. App. 678 [7 Pac. (2d) 325] ; 1 Black on Rescission, 2d ed., 363, sec. 118; 12 Cal. Jur. 758, sec. 34.)

■ The appellants assert there is a fatal variance between the allegations of the complaint and the proof thereof, since both Mr. and Mrs. Spadoni are alleged to have been purchasers of the property, while the evidence shows that Anita Spadoni alone signed the contract of purchase. It is claimed she admitted they purchased the property relying solely upon the statement made to her by Roy Fazzi that ''Mr. Maggenti had built a beautiful home in Italian style'', and that this information was not communicated to her husband. There is no merit in either of these contentions. It is quite evident Mrs. Spadoni lacked understanding of the full import of this question. She further testified that she and her husband visited the home of the defendants one Sunday morning in company with both Mr. Fazzi and Mr. Maggenti, at which time they spent about fifteen minutes inspecting the house. She says that in the presence of her husband

"Mr. Maggenti said he had built it himself five years prior, in Italian style". There is ample evidence to indicate that the plaintiffs purchased the property relying upon the several representations regarding the age, character and quality of the structure made by both Mr. Fazzi and Albert Maggenti.

The alleged variance because of the fact that Mrs. Spadoni alone signed the contract of purchase is without merit. Both Mr. and Mrs. Spadoni are party plaintiffs in the action. No demurrer on the ground of misjoinder of parties was filed. The cause was tried on the theory that both spouses were joint purchasers of the property. The complaint alleged that fact. The answer affirmatively admitted that the deed of conveyance was executed "to the plaintiffs". An examination of the record leaves no doubt of the fact that the plaintiffs were joint purchasers of the property.

The defendants are bound by the false representations of both Albert Maggenti and Roy Fazzi. Mr. Fazzi was the agent of the defendants. Albert Maggenti admitted this fact in the following question and answer: "Q. You had asked Mr. Fazzi to obtain a purchaser? A. Yes sir." Under the circumstances of this case it is immaterial whether false representations were made to only one of the plaintiffs without communicating them to the other party. Fraud perpetrated upon either one of joint purchasers of property may warrant a rescission of the conveyance thereof. Moreover there is ample evidence in the present case to justify a finding that the misrepresentations were made to both plaintiffs.

The failure of the court to adopt a finding upon the issue of laches is relied on as reversible error. In view of the facts which are disclosed in the present case, this omission is not reversible error. The delay in ascertaining the actual condition of the dwelling-house and serving the defendants with notice of rescission was only about five months after the consummation of the sale of properties. While the defects which existed in the floors and in other minor respects were immediately apparent, the chief defect consisted in the fact that the building was not a new modern home, but upon the contrary that it was an old remodeled warehouse. The outside walls were covered with stucco and they were plastered inside. This important defect regarding the character

of the building was not discovered until some time after the plaintiffs took possession. In the meantime the defendants had gone to Italy. It required some time to locate them. The answer admits that notice of rescission was mailed to them August 10, 1927. It is true that section 1691 of the Civil Code requires that one "must rescind promptly, upon discovering the facts which entitle him to rescind". Under the circumstances of this case we are of the opinion the plaintiffs fulfilled the requirements of this statute by giving notice of rescission within five months after taking possession of the property. The discovery of the minor defects may not be said to have been sufficient to charge them with knowledge of such fraud as would entitle them to rescind. It is reasonable and natural that one would be reluctant to rescind the purchase of a valuable and otherwise desirable home upon the discovery of minor defects. Such faults naturally lead to a more critical examination for more serious defects. The fact that the plaintiffs were not hasty in rescinding their purchase of property is evidence of their confidence in the representations of the defendants. It naturally required some time to discover hidden defects such as the fact that the house was an old remodeled warehouse instead of a new modern dwelling. The realization that they had been seriously defrauded was the result of a slow process of investigation and verification of reports which came to their attention after they took possession of the property.

There is no precise rule fixing the exact lapse of time which will actually constitute laches sufficient to defeat an action for rescission. (*Kleinclaus* v. *Dutard,* 147 Cal. 245 [81 Pac. 516].) The question as to whether an aggrieved purchaser of property has exercised due diligence in the discovery of fraud and in rescinding the transaction must ordinarily depend upon the facts of each particular case. (*Powell* v. *Oak Ridge Orchards Co.,* 84 Cal. App. 714 [258 Pac. 636]; *French* v. *Freeman,* 191 Cal. 579 [217 Pac. 515]; *Faull* v. *Johnson,* 94 Cal. App. 230 [270 Pac. 993]; *Dunshee* v. *Boadway, supra;* 4 Cal. Jur. 800, sec. 30.)

While the question of laches is usually a problem for the determination of the chancellor, by the adoption of appropriate findings, in the present case it is apparent the court would have been bound to find that the plaintiffs were not guilty of laches. The failure to adopt a finding upon this

issue was therefore not reversible error. (2 Cal. Jur. 1032, sec. 614; 24 Cal. Jur. 944, sec. 188; *MacDonald* v. *Reich & Lievre, Inc.*, 100 Cal. App. 736 [281 Pac. 106].) Moreover, the court found that: "Plaintiffs did not discover the falsity of said . . . representations . . . until the sum.(mer) of 1927, and shortly prior to the 10th day of August, 1927." This is equivalent to a finding that the plaintiffs were not guilty of laches.

■■■ It is asserted the court abused its discretion in denying defendants' motion for a new trial which was based upon the ground of newly discovered evidence. The evidence upon which the appellants rely is disclosed by the affidavit of Ben Newman in which he avers that he had a conversation with Pietro Spadoni on January 20, 1927, prior to the execution of the contract to purchase the property in question, in which conversation he told the plaintiff that the defendants' dwelling-house was an old remodeled warehouse. The counter-affidavit of Pietro Spadoni, which was filed and considered by the court on the motion for a new trial denies this statement of Ben Newman. It recites that the defendants had no information or knowledge of the fact that the building was an old remodeled warehouse until shortly prior to August 10, 1927. There was therefore a flat contradiction regarding this alleged newly discovered evidence. The question of the credibility of affiants in counter-affidavits on motion for a new trial rests upon the sound judgment of the trial judge.

The granting or refusing of a motion for new trial on the ground of newly discovered evidence is within the sound discretion of the trial court. Its determination of the motion will not be disturbed except for a manifest abuse of discretion. (2 Cal. Jur. 906, sec. 534; *Tibbet* v. *Tom Sue*, 125 Cal. 544 [58 Pac. 160]; *Maddux* v. *Mora*, 99 Cal. App. 695 [279 Pac. 467].) No such abuse of discretion appears in the present case.

■■■ The court is charged with error in denying defendants' motion for a continuance of the trial. This motion was made under the provisions of section 595 of the Code of Civil Procedure on the ground of the absence of the co-defendant, Marie Maggenti, on account of illness. An affidavit reciting the evidence which the defendants expected to prove by this witness was offered in support of the

motion. As this affidavit was read to the court, paragraph by paragraph, it was stipulated the witness would so testify, and the material portions of this affidavit were admitted as evidence in the case to be considered by the court in determining the cause. The trial of the cause began on May 18th, and lasted for several days. Mrs. Maggenti attended the trial for several days until the evidence for the defendants was nearly completed, before this motion for a continuance was made. On the first day of the trial she was called by the plaintiffs and examined under the provisions of section 2055 of the Code of Civil Procedure. She was cross-examined by her own attorney at length and without restraint. Her testimony consumes twenty-six pages of the transcript. Much of her evidence at the trial is substantially the same as the recitation of facts which appears in the affidavit which was read on the motion for a continuance. In support of this motion Dr. Dauboni testified that Mrs. Maggenti was afflicted with extreme nervousness; that she had suffered physically from the strain of court proceedings and that a rigid cross-examination in court would be very harmful to her. There was no showing that she was actually too ill to attend court, although the impression was conveyed that she would suffer severe nervous shock from a rigid cross-examination. Assuming that she was too ill to attend court, there was no definite showing as to when she might be expected to be physically able to undergo further examination as a witness. The doctor expressed his opinion of her physical condition in the following indefinite manner: "(Mr. Paonessa) Q. But she is able to answer questions? A. Oh, yes, sure. I don't want to enter into the merits of the case at all, but what I want to say is this: *If these questions are to be unduly exciting,* then naturally it would not be advisable to have her here." The judge of the court evidently obtained the impression that it would not be harmful for the witness to be further examined in court provided she should be calmly interrogated and that care was exercised not to unduly excite her. He said: "I don't want to endanger anybody's rights, and I don't know that it would greatly excite Mrs. Maggenti to come into court. We don't have a great many witnesses here, and if necessary we can adjourn to my chambers and have her testify in there." The judge had observed this witness under examination a

few days previously. He must have known just how excitable she really was. Moreover, a suggestion from the plaintiffs that her deposition might be taken by stipulation was rejected. Her husband and co-defendant was in constant attendance at the trial. His evidence was substantially the .same as the recitation of facts which was contained in the affidavit. The defendants had ample opportunity to further examine Mrs. Maggenti during the several days she attended court. The attorneys for the defendants were afforded an opportunity to confer daily and constantly with Albert Maggenti, who apparently knew all the material facts involved in the defense to the action, of which his wife was cognizant. He was the defendant who was most actively engaged in consummating the sale. Under such circumstances it seems clear the defendants were not prejudiced by the denial of the motion for a continuance of the trial.

In the interest of substantial justice, and for the purpose of expediting the disposal of the court calendars and the particular cause on trial, a motion for the continuance of a case should be made at the earliest practicable time after knowledge of such necessity is acquired. (*Tiffin* v. *Cummings*, 144 Cal. 612 [78 Pac. 23].) The motion for a continuance in the present case was not made with due diligence. The granting or denial of a motion for the continuance of a trial is within the sound discretion of the trial judge. The determination of this motion will not be disturbed on appeal in the absence of a clear showing that this discretion has been abused and that the cause of the petition has been substantially prejudiced thereby. (*Swayne & Hoyt* v. *Wells-Russell & Co.*, 169 Cal. 204 [146 Pac. 686]; *Marcucci* v. *Vowinckel*, 164 Cal. 693 [130 Pac. 430]; *Flynn* v. *Fink*, 60 Cal. App. 670 [213 Pac. 716]; Walker on Errors in Civ. Proc. 126, sec. 42–L.) No prejudice to the defendants' cause appears in the present case on account of the denial of the motion for a continuance. The order, therefore, does not constitute reversible error.

The adopting of a referee's report of an accounting to ascertain the sums of money due and the property to which each party is entitled, is assigned as erroneous. It is asserted the referee failed to receive evidence upon which his report is based, and neglected to adopt findings with

relation thereto and that the defendants were not notified of the time and place of hearing.

█ When the trial of the cause was concluded, the court, on its own motion, entered an interlocutory decree determining the issues which were involved and appointing Thomas Vacher, Esq., as referee, under the provisions of section 639 of the Code of Civil Procedure, to obtain an accounting between the parties to ascertain the identity of all properties and determine the sums of money to which each is entitled. A copy of this interlocutory decree and order appointing a referee was immediately served upon the defendants. Some two months later the referee's report was filed in court. It contains a detailed statement of all properties involved in the transaction and all sums of money to which each is entitled, segregated under descriptive headings. It allows the defendants nineteen months' rental at $250 per month, for the use of the dwelling-house while it was occupied by the plaintiffs. The report was accompanied by the following signed summary and conclusions of the referee:

"Expenses paid by plaintiff............$16,422.12
Compensation to defendants...........$ 4,884.91
_____
Balance due plaintiffs.................$11,537.21

"Real estate involved, including improvements thereon, and all personal property as per inventories 1 & 2, to be transferred to defendants, upon payment to plaintiffs, of the above amount of $11,537.21.

"Respectfully submitted,
"(Signed) THOMAS VACHER,
"Referee."

We deem the foregoing conclusion to be a sufficient finding, to conform to the requirement of the law upon the particular issue which was submitted to the referee. (22 Cal. Jur. 696, sec. 13.) █ Having had due and timely notice of the reference of the cause for the purpose of taking an accounting, it became the duty of the defendants to exercise reasonable diligence to ascertain the time and place of hearing, and to procure the presence of any witnesses whom they desired to be examined. A failure on the part of the defendants to exercise such diligence is a waiver of the right to complain of the lack of notice or the op-

portunity to present desired evidence, particularly since this opportunity was afforded the defendants at the time the referee's report was subsequently heard and adopted by the court. (*Doudell* v. *Shoo*, 20 Cal. App. 424, 452 [129 Pac. 478]; *Hoeft* v. *Hotchkiss*, 76 Cal. App. 670 [245 Pac. 458].) After the report was filed with the court, both the plaintiffs and defendants submitted amendments and objections thereto, which were considered and passed upon by the court. The report was formally adopted by the court. The defendants then had every opportunity to present any evidence which they desired to be heard. They may therefore not complain of a lack of notice. ▆▆▆ The statute provides for no formal notice of a hearing before a referee. Formal notice is therefore not jurisdictional. (*Doudell* v. *Shoo, supra.*)

▆▆▆ Moreover, the certified transcript on appeal contains no record of the proceedings before the referee. We understand from the report that the defendants were actually in attendance at the accounting before the referee. At least there is no evidence in the record before us to indicate that the defendants were not present at that hearing, and nothing appears to suggest they were deprived of the opportunity to procure the attendance of their witnesses. The error complained of does not appear from the record before this court, and may therefore not be considered. Error may not be predicated on a record which fails to disclose the omission complained of. So far as the record on appeal is concerned, it appears that the reference for an accounting was legally made and duly heard, and that the report thereof, as amended, was in proper form and lawfully adopted by the court.

Specific and adequate findings upon all the essential issues of the case were adopted by the court. A judgment of rescission was accordingly rendered which awarded the plaintiffs judgment for the balance of $11,537.21 which was found to be due to them by the referee, plus the additional sum of $1629, accrued interest thereon, which was allowed by the court.

▆▆▆ Finally it is contended the plaintiffs' attorneys were guilty of prejudicial misconduct by the use of vituperative language in their argument to the court. In the appellants' brief they assert that certain inflammatory lan-

guage was used by plaintiffs' counsel in their argument to the trial court and that they were guilty of improper conduct in the examination of witnesses. We are directed to no portion of the transcript on appeal where such language or the evidence of prejudicial misconduct may be found. We have searched the proceedings in vain for a record of the arguments of counsel. ■■■ A reviewing court is not at liberty to consider alleged errors which do not appear in the certified transcript of proceedings on appeal. (2 Cal. Jur. 726, sec. 418; *Randall* v. *Allen*, 180 Cal. 298, 302 [180 Pac. 941]; *Troy* v. *Troy*, 72 Cal. App. 757, 769 [238 Pac. 143].) Where the appellants fail to point out the folio or page of the transcript where the alleged errors may be found a reviewing court should assume these errors have been waived. (*Bell* v. *Staacke*, 151 Cal. 544 [91 Pac. 322]; *Dauphiny* v. *Buhne*, 153 Cal. 757, 766 [126 Am. St. Rep. 136, 96 Pac. 880].) It has been frequently said by the Supreme Court that an appellate court may not be expected to prosecute an independent inquiry of the proceedings or examine voluminous transcripts of evidence in search of error which the appellant has failed to disclose. These assignments of error are therefore unavailable on this appeal.

The judgment is affirmed.

Preston, P. J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 18, 1932.