[Civ. No. 8655.    Third Dist.    Feb. 17, 1956.]

G. C. BERKER, Appellant, v. ROBERT A. BARNES et al., Respondents.

Howard B. Crittenden, Jr., for Appellant.

Golis & Fredericks and Francis M. Passalacqua for Respondents.

VAN DYKE, P. J.—This is an appeal from a judgment decreeing that plaintiff-appellant, contrary to the allegations of his complaint, was not in partnership with defendant Robert A. Barnes in conducting a business of remanufacturing lumber; and further adjudging that he had no property interest in any of the assets obtained and used by Barnes in that business.

Appellant G. C. Berker, hereinafter called "Berker," alleged that he and respondent Robert A. Barnes, hereinafter called "Barnes," had formed a partnership, with Barnes contributing cash, and Berker contributing services; that pursuant to the partnership agreement machinery costing $28,400 was purchased upon the credit of the partnership; that respondent Pauline Barnes, the wife of Barnes, had acted as bookkeeper for the firm, but had fraudulently kept improper records that did not reflect the firm's affairs; that Barnes had refused to account and had excluded appellant from partnership affairs. By answer Barnes and wife denied the existence of a partnership and denied that Berker had any interest in the assets obtained and used by Barnes in the lumber remanufacturing business. A trial was had on the issues of partnership and property interests of Berker and at the conclusion thereof the trial court filed a written opinion in which it stated its conclusion that, although appellant and Robert A. Barnes had been associated in the lumber remanufacturing business, the association rested upon a contractual relationship which, when certain conditions had been met, would result in a partnership between the two. The court stated these conditions as follows: That if between the inception of the enterprise in February of 1950 and July 21, 1950, there had been a profit from the business sufficient to pay for the equipment purchased and to reimburse Barnes for his advances, the association would ripen into a partnership wherein each partner would own a half interest. Therefore, the court stated, Berker was entitled to an accounting "to determine whether or not the contingencies here found to exist were realized on July 21, 1950." A reference was ordered, the order of reference reading that the referee should take an accounting between the parties under the directions of the court: To determine the capital investment of the parties in the business venture; to ascertain the profits; to ascertain if the profits were sufficient to reimburse Barnes for capital expenditures made by him and also

to pay for the equipment, material and other capital expenditures of the venture; to determine the drawing and expense accounts of the parties; and to report to the court whether the records of the business were complete enough so that under any accepted method of accounting the true condition of the business would be reflected. The court declared that the reference was made pursuant to section 639 of the Code of Civil Procedure and ordered the parties to make available to the referee all their pertinent books, records and vouchers.

The referee filed what he denominated ''Reply to Order of Reference'' wherein he advised the court that he was unable to determine capital investment because the record of the transactions of the venture had been intermingled with all business records of respondents; that he could not ascertain profit or loss for want of separate records and that, although he found memos of transactions related to the venture, there was nothing to substantiate the memos; that with no record of receipts and disbursements he found it impossible to determine whether or not there had been profit sufficient to retire capital indebtedness; that due to incomplete records he was unable to determine drawing and expense accounts of the parties; that due to there being no separate business records which reflected the venture it was his opinion there would be no accepted method of accounting that could be applied to truly reflect the actual transactions. He concluded this reply by stating: ''In conclusion, in spite of incomplete records, it is my opinion that no profit possibly could have been made on that volume of business.'' To this ''Reply'' Berker filed lengthy exceptions which we summarize: He alleged that there had been a meeting of the parties before the referee whereat the parties had discussed with the referee the appropriate accounting procedure, Berker contending that the accounts kept by Mrs. Barnes for the venture were purposely kept so as to be incomplete and inconclusive and that, therefore, the referee should adopt the method of accounting which, Berker asserted, was used in income tax cases, charging against Barnes, as income from the venture, all expenditures made by the Barneses during the period, leaving them to explain and to show what part of the total was not income from the venture. Barnes asserted that it was understood at the meeting that the referee would examine such records and documents as were available and then a further conference would be held, but that no such conference had been called or held and that he had been given

no opportunity to participate in the accounting before the
"Reply" was filed. Berker averred that the records had
been kept so as to conceal the true receipts from the venture
and that some of the receipts had been converted to the per-
sonal use of Barnes; that the machinery and equipment pur-
chased and installed for the venture had been bought on the
joint liability of both himself and Robert Barnes; that Barnes
had used workmen paid by the venture to help him redesign
and reequip his own sawmill and that in many ways Barnes
had taken advantage of venture income to further his personal
interests, including purchase of an automobile and construc-
tion of a dwelling. Berker demanded that the referee be
ordered to charge as income all money passing through the
hands of Barnes and Mrs. Barnes except such as could be
proved should be allocated to other sources than the venture,
or that, in the alternative, the court itself determine that
Barnes was charged with keeping proper records, that, since
he had not done so, the presumption of suppression of evi-
dence had arisen and that, in the absence of explanation, the
court "determine the issues favorably to the plaintiff." While
it does not affirmatively appear from the record, it seems to
be assumed that a hearing was held on these exceptions and
that the matter was remanded to the referee. The record
does not show what further directions, if any, were given the
referee. Thereafter the referee filed a report which may be
summarized as follows: That on March 3, 1953, a meeting
between the referee, the parties and their counsel was heard,
"at which meeting evidence was taken regarding the accounts
to be inquired into and counsel made their arguments regard-
ing the accounting methods"; that on March 12th following
on notice and at the place of business of Barnes the referee
had read, inspected and made inquiry into the Barneses'
books and records pertaining to the venture operations; that
thereafter the exhibits introduced in evidence by the parties
at the trial before the court had been made available to
him and that "after hearing said evidence, said arguments
and after reading, inspecting and making inquiry into said
books, records and exhibits, and being fully advised in the
premises" the referee reported as follows: That due to the
incompleteness of the records the amount of capital invest-
ment by each party could not be determined exactly, but
Barnes, only, had made capital investment and his invest-
ment was not less than $10,800; that the net profits amounted
to $2,100 without considering capital investments; that due

to incompleteness of the records the referee could not compute exactly either capital expenditures made by Barnes or payments made by him for equipment, material and other capital expenditures, but that the referee found from such records and other evidence as he had before him that profits could not have been sufficient to reimburse Barnes for capital expenditures and also to pay for equipment and material purchased and used; that for the same reasons he could not determine exactly what the drawing accounts and expenses had been, but did find that they were nominal and so slight as not to affect his other findings; that so incomplete were the records that no accepted accounting method would truly reflect the actual transactions of the venture, but nevertheless he found that the venture could not have made a profit and that it did not make a profit sufficient to reimburse Barnes for sums advanced.

By stipulation appellant took the same exceptions to the last report as he had taken to the ''Reply'' which preceded it and a hearing was held before the court on these exceptions. Thereafter the court made findings of fact as follows: There was no partnership, but there had been a contractual relation beginning about February 26, 1950, and ending July 21, 1950, the contract being an oral one, and being concerned with the operation of a business for the remanufacture of lumber. The parties had agreed as follows: Barnes was to supply necessary capital and credit to purchase equipment, material and other items of capital expenditure to establish and operate the business and that he did so; that appellant was to work in the supervision and operation of the plant and should receive $10 per week, living quarters and the use of an automobile; that in the event that the following conditions occurred, and not until all had occurred, defendant was to become a half owner in the assets of the business, excluding the real property on which the business was located, which conditions were: 1. That the business operate profitably; 2. That profits be sufficient to reimburse Barnes for all contributions to the business and to pay for all equipment purchased for the business; 3. That these conditions must have occurred on or before July 21, 1950. The court further found that during the period mentioned the capital investment by Barnes was not less than $10,800, whereas the net profits without considering capital expenditures was only $2,091.99; that the profits were insufficient to reimburse Barnes. The court concluded as a matter of law that Berker

had not achieved the status of a partner and should take nothing.

Barnes had cross-complained, alleging that Berker had, while managing the business, collected $453.53, and the court awarded Barnes judgment on the cross-complaint in that sum. Berker moved for a new trial, which was denied.

In support of his appeal appellant designated that the following matters constitute the record: The complaint, the answer and counterclaim, the court's opinion, the order of the reference, "Reply to the Order of Reference," the exceptions, the final report of the referee and the exceptions thereto, findings of fact and conclusions of law, the notice of intention to move for a new trial, the order denying the same and the notice of appeal.

The record presented is a partial record. Concerning such a record rule 52, Rules on Appeal, provides: "If a record on appeal does not contain all of the papers, records and oral proceedings, but is certified by the judge or the clerk, . . . it shall be presumed in the absence of proceedings for augmentation that it includes all matters material to a determination of the points on appeal. On an appeal on the judgment roll alone, or on a partial or complete clerk's transcript, the foregoing presumption shall not apply unless the error claimed by appellant appears on the face of the record." On the record here presented, unless the errors claimed appear on the face of the record, the usual presumption of regularity in the proceedings in the trial court and before the referee must be accorded to respondents. We quote the following from *White* v. *Jones,* 136 Cal.App.2d 567 [288 P.2d 913]:

"Effective January 1, 1951, rule 52 was amended by adding thereto the following sentence: 'On an appeal on the judgment roll alone, or on a partial or complete clerk's transcript, the *foregoing presumption* shall not apply unless the error claimed by appellant appears on the face of the record.' Under the rule as amended the presumptions in support of the judgment that were made prior to the adoption of the Rules on Appeal, apply, except as expressly limited by rule 52, and it is not presumed, in the absence of the oral proceedings being made a part of the record on appeal pursuant to one of the methods provided for by the rules, that the record on appeal contains all matter material to the determination of the appeal."

We have concluded that the claimed errors do not appear on the face of the partial record presented.

It appears that counsel for the appellant sensed the inadequacy of the record when he came to write the opening brief That brief contained a statement of facts which contains many references to oral proceedings asserted to have occurred. We will mention a few by way of example. The brief contains assertions as to testimony by Barnes, by Berker and by Mrs. Barnes. References are made to the transcript, but these references are seen to be to the trial court's opinion. ▮ The trial court's opinion, although it may be made a part of the record, cannot be taken as a report of oral proceedings. Reference is made to the testimony of 11 other witnesses, and this court is in each instance referred to the trial court's opinion in substantiation of the averments as to what these witnesses testified to. No record has been presented of the oral proceedings that took place before the court made its interlocutory ruling. Concerning the preliminary meeting before the referee, it is asserted that it was there stated by respondents that they had a full and complete record of all financial transactions of the venture and the reference is to a like assertion made in appellant's exceptions to the referee's report. It is asserted that the parties understood after the preliminary meeting the referee would examine records and documents and would then call a second meeting which was not done. Again the reference is to the exceptions to the report. It is asserted that during the period between the beginning and the end of the venture Barnes had maintained and paid a crew of men who were working in his lumber operations outside the venture and that he paid the costs and wages of the crew from the proceeds of the venture operation and no substantiation whatever is furnished for this assertion. It is factually asserted that Barnes used venture funds to pay off $2,000 worth of personal obligations and like assertions are made touching the conversion of other venture funds by the Barneses. There may have been evidence of these matters, but the record does not disclose it.

Respondents, challenging the sufficiency of the record, assert that in fact the trial court heard the exceptions taken by appellant to the referee's report to the court and in doing so received oral evidence of which no transcript is presented. They point out the following recitals in the final report of the trustee: That at the first meeting between the referee, the parties and their counsel evidence was taken regarding the accounts to be inquired into; that thereafter, after giving notice of time and place, the referee at the place of business

of the respondents read, inspected and made inquiry into the records pertaining to the venture; that thereafter the exhibits received in evidence at the court trial were delivered to him and that he had read, inspected and inquired concerning them; and finally that after hearing evidence and arguments, reading, inspecting and inquiring about the records and being fully advised he made his report. Respondents assert that this court does not have before it the record of the proceedings before the referee, and in this we agree.

Since the oral proceedings had before the court made its interlocutory decision have not been presented, we assume, as we must, that these findings as to the status of Berker were substantially supported and on this record cannot be attacked.

■ Berker by his complaint had sought to establish a partnership and the right to an accounting and asked that an accounting be ordered. He did not to the satisfaction of the court establish the formation of a partnership at the beginning of his association with respondents; nevertheless he did establish that the parties had agreed to such a relationship and to equal ownership of assets between the two if certain conditions were met within a certain period. The trial court considered that appellant was entitled to an accounting to determine whether or not these conditions had been met and that was the purpose of the reference. While he may not have agreed to the interlocutory findings concerning his contractual status, nevertheless Berker was obliged either to refuse to enter the accounting proceedings before the referee, or to attend thereat and participate therein; and if he had evidence material thereto he was obligated to make it available or at least to seek an opportunity to do so. He could not, as he appears to have done, rest content with his claim that a certain method of accounting had to be followed by the referee. He was, of course, advised that the reference had been made and that it was not a reference to take an exact account but for the purpose of an accounting sufficient to determine whether or not the conditions of his status as partner and half owner in the assets had been met. It was not necessary to this reference that exact accounting should be had. The inquiry was limited by the order of reference to ascertain whether or not these conditions had been met.

While Berker asserts in his brief that he was given no opportunity to introduce evidence, he has not made that to appear by the record presented. We quote the following from *Doudell* v. *Shoo,* 20 Cal.App. 424, 452-453 [129 P. 478]:

". . . But what we intended to say was that, if neither counsel nor the defendants were given notice of the hearings [before the referee], they should have called the court's attention to that fact before the findings were made and filed, they having been given ample notice of the filing of the report to have done so, and that the court (although no procedure of this sort is expressly authorized), in the exercise of its discretion, and in the interest of justice, would have doubtless caused the referee to proceed *de novo* in the matter of his investigations so that the parties could have all been present thereat, if they so desired. As stated in the former opinion, the defendants did not elect to take that course."

The opinion proceeds to state that there were conflicting affidavits on a motion for new trial, among which were affidavits that it was not necessary to take testimony or examine witnesses other than the plaintiff in that action since the records before the referee were sufficient to serve the purposes of the reference. The court said then, at page 454:

". . . [U]pon that showing alone the court below was justified in refusing to set aside the findings upon the ground here urged against the report of the referee."

In *Spadoni* v. *Maggenti,* 121 Cal.App. 147, 159-160 [8 P.2d 874], it was said:

". . . Having had due and timely notice of the reference of the cause for the purpose of taking an accounting, it became the duty of the defendants to exercise reasonable diligence to ascertain the time and place of hearing, and to procure the presence of any witnesses whom they desired to be examined. A failure on the part of the defendants to exercise such diligence is a waiver of the right to complain of the lack of notice or the opportunity to present desired evidence, particularly since this opportunity was afforded the defendants at the time the referee's report was subsequently heard and adopted by the court."

As we have noted, it appears from the record before us that the court held two hearings on motion of appellant based upon his objections to the conduct of investigations by the referee, and the record presented is silent as to what the court then considered. It does appear from the referee's

first "Reply to Order of Reference" and from his final report that he did not have before him sufficient accounting data from which to make an audit of the venture in which appellant and respondent Robert A. Barnes had been engaged, but such an audit was not required. What the court wanted to know was whether or not the conditions he had stated as being conditions precedent to any creation of a partnership had occurred. The referee finally reported that from his investigation and from, as he said, the evidence before him the conditions had not occurred. The court adopted these conclusions and entered judgment against appellant. On this record we cannot say that error has been made to appear. It is easy to argue and to argue well that this was in fact a reference to ascertain facts, that the referee ought to have noticed hearings and afforded full opportunity for the parties to present such qualified testimonial and documentary evidence as they wished to have received. But a failure of the referee to do so made it appropriate that application be made to the court, either for an interim order specifically instructing the referee, or that the referee's conduct be made the subject of exceptions to his report. This latter was the method adopted, and the exceptions placed the matter in the hands of the trial court. What the court did or failed to do has not been presented. In the absence of any further record than the court's adoption of findings of fact we cannot say that the judgment against appellant was the result of error.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied March 9, 1956, and appellant's petition for a hearing by the Supreme Court was denied April 11, 1956.