[No. A030715. First Dist., Div. Five. June 18, 1986.]

L. ANTHONY MARTINO, Plaintiff, Cross-defendant and Appellant, v. PIETRO G. DENEVI, Defendant, Cross-complainant and Respondent.

**[Opinion certified for partial publication.\*]**

---

\*Parts II and III are not published, because they do not meet the standards for publication contained in California Rules of Court, rule 976(b).

**COUNSEL**

Hunter & Bovarnick, Steven H. Bovarnick and Robert E. Hunter for Plaintiff, Cross-defendant and Appellant.

Edward D. Nino, Nino, Felice & Arata, Janice L. Earle, Pauline R. Reimer and Earle & Reimer for Defendant, Cross-complainant and Respondent.

## OPINION

**LOW, P. J.**—Plaintiff L. Anthony Martino appeals from the judgment entered in favor of defendant Pietro Denevi which divided the assets of their partnership between them and awarded attorney fees to defendant. If there is no timely objection, a trial court may adopt a referee's report to conclusively resolve the respective partnership interests. We affirm the judgment except for the award of attorney fees which requires a rehearing.

In 1975, plaintiff and defendant formed a general partnership, Bayside Racquet Club (Bayside), for the purpose of developing tennis and other fitness-related facilities. While continuing the Bayside operation, the parties also entered into separate partnership agreements with each other and, sometimes, third parties to conduct a variety of sports-related businesses.

During 1977, defendant located a tract of land in Tahoe Valley, California, which was being developed as a recreational facility by its owner, Kaiser Aetna. Bayside had just cured a foreclosure on its principal piece of real property so it was without funds to pursue this investment opportunity. Defendant independently obtained an option to purchase the property from Kaiser Aetna.

The parties dispute plaintiff's involvement during this period of time. Plaintiff asserts that both partners discussed the acquisition of the Tahoe property and together approached a third party, H. Brugger, to participate in the project. Defendant maintains that after an initial discussion, plaintiff expressed no interest; defendant then contacted Brugger on his own and continued his attempts to acquire the property. Defendant and Brugger formed a joint venture partnership to acquire and develop the Tahoe property. Brugger agreed to provide the necessary financial support. They next entered into an agreement with Kaiser Aetna to purchase the property. However, in October 1977, Brugger repudiated his agreement with defendant and made a separate agreement with Kaiser Aetna to purchase the property by himself. Defendant looked elsewhere for financial support for the project. Plaintiff apparently became interested in the project and aided defendant in his efforts to locate financial backing. Once such backing was found, defendant ap-

proached Kaiser Aetna to finalize the deal; Kaiser Aetna allegedly refused to honor the earlier agreement and continued to deal with Brugger.

Defendant filed suit against Brugger alleging his breach of a fiduciary duty. In settlement of his claim, defendant received damages from both Brugger and Kaiser Aetna. Plaintiff did not participate in that action, nor did he make a claim for a share of the settlement proceeds until mid-1981. Plaintiff asserts his belief that, although that action was brought by defendant in his own name, the suit was based on a usurpation of a Bayside business opportunity. He therefore believed defendant should account to the partnership for the monies recovered.

## I

Plaintiff filed a complaint in 1981 seeking dissolution of Bayside, an accounting and damages. Defendant cross-complained alleging plaintiff's breach of the partnership agreement, breach of fiduciary duty, misrepresentation and fraud. Prior to trial, the trial court ordered a reference and appointed Ollie Wright, Bayside's accountant, as a special referee, under Code of Civil Procedure section 639, to examine Bayside's records and prepare an accounting of the respective partnership interests. The parties consented to the reference and each aided the referee by providing necessary documentation and otherwise communicating important information relative to Bayside's finances. The reference report was completed in October 1983. Plaintiff submitted additional information to the referee and requested a supplemental report. The supplemental, and final, reference report was received by the parties in February 1984. Neither party filed objections to the report or its contents.

At the nonjury trial in July 1984, defendant moved for the adoption of the referee's report as a conclusive finding of the partnership interests in Bayside. Plaintiff objected orally, stating that the reference "was to be only for the information of the Court before taking testimony in this matter." The trial court ruled that plaintiff had waived his right to object to the report contents by failing to file written objections under Code of Civil Procedure section 645. The reference report was adopted by the trial court to be used to determine the parties' respective interests in the partnership.

Plaintiff contends the trial court erred in accepting the reference report as a conclusive finding on the accounting issues in the case. He asserts the adoption of the reference as a binding determination of facts deprived him of a fair trial, in that he was not permitted to introduce other evidence regarding his partnership interest at trial.

■ Code of Civil Procedure section 645 provides that a party may object to the findings of a referee. "When the referee excludes proper testimony, or admits improper evidence, or does any other act materially affecting the rights of either party . . . then such party should except, and see that the exception is truly stated in the report." (*Branger* v. *Chevalier* (1858) 9 Cal. 353, 362.) If the referee has failed to consider certain evidence, the party whose interest is affected must notify the referee as soon as possible, whether during the reference or after the report is issued, so that the referee may have a chance to rectify any oversight or error he may have made. If no change to the report is necessary, the party's objection should nonetheless be noted in the report.

Alternatively, the party may move to set aside the report.[1] Such a motion should be made promptly following the date the report is filed with the court. (See *Peabody* v. *Phelps* (1858) 9 Cal. 213, 224 (conc. opn. of Terry, C. J.).) The papers supporting the motion must set forth the evidence which the referee allegedly rejected or overlooked (see *Spadoni* v. *Maggenti* (1932) 121 Cal.App. 147, 160 [8 P.2d 874]; *Hoeft* v. *Hotchkiss* (1926) 76 Cal.App. 670, 671 [245 P. 458]), and written notice must be provided to the adverse party no later than 15 days before the motion will be heard. (Code Civ. Proc., §§ 1005, 1010; *McDonald* v. *Severy* (1936) 6 Cal.2d 629, 631 [59 P.2d 98].) The failure to file a written objection to the contents of the referee's report or to properly move to set aside the report results in the waiver of the right to object to the referee's findings. (*Klein* v. *Maddox* (1943) 59 Cal.App.2d 141, 144 [138 P.2d 28].)

■ Plaintiff did bring certain additional evidence to the attention of the referee after the preliminary report was issued late in 1983. However, following the issuance of the final report, plaintiff did not object to the contents of that report nor did he request that his objections be included in the report. Moreover, plaintiff did not move to set aside or modify the report, nor did he at any time file written objections with the trial court.

Even assuming that plaintiff's oral objection to the adoption of the report at trial was timely, plaintiff failed to specify why the reference was deficient and did not point to evidence which would discredit the referee's findings. Rather, the record reveals plaintiff's attempt to object to the reference procedure itself. This was an untimely complaint about the ordering of a reference, particularly in light of plaintiff's active participation in the reference procedure. (See *Shain* v. *Peterson* (1893) 99 Cal. 486, 487 [33 P. 1085].)

[1] A similar procedure is used by a party objecting to a referee's report on the partition of real property or to an arbitration award. (Code Civ. Proc., §§ 873.290, 1285.)

Plaintiff failed to promptly and properly object to the referee's conclusions or to move to set aside the reference report. He therefore waived any right to complain about the referee's findings. There was no error by the trial court in adopting the reference report as a conclusive finding regarding the parties' interests in Bayside.

## II, III*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## IV

The final contention on appeal is that the trial court abused its discretion in awarding defendant attorney fees in the amount of $40,000. Plaintiff asserts that this award is unreasonable in light of the virtual absence of documentation regarding the work done and time spent by defendant's attorneys in preparing the defense.

■ Under rule 2-107 of the State Bar Rules of Professional Conduct, no attorney may charge or collect an unconscionable fee. Reasonableness of the fee is determined by looking to a variety of factors: "'the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded [citation]; the intricacies and importance of the litigation, the labor and the necessity for skilled legal training and ability in trying the cause, and the time consumed. [Citations.]'" (*In re Marriage of Cueva* (1978) 86 Cal.App.3d 290, 296 [149 Cal.Rptr. 918], quoting *Berry* v. *Chaplin* (1946) 74 Cal.App.2d 669, 679 [169 P.2d 453]; see also Rules Prof. Conduct, rule 2-107(B).) To this end, each attorney should maintain accurate records of work done and time spent in preparing each client's case. Lawyers who fail to keep accurate records of the services they perform may lose or waste up to 40 percent of their billable time. (Managing Your Law Office (Cont.Ed.Bar 1986) p. 140.) A client who receives a detailed billing record gains the advantage of being able to evaluate the worth of the services provided to him by the attorney.

■ To enable the trial court to determine whether attorney fees should be awarded and in what amount, an attorney should present "(1) evidence, documentary and oral, of the services actually performed; and (2) expert opinion, by [the applicant] and other lawyers, as to what would be a rea-

---

*See footnote, page 553, *ante*.

sonable fee for such services." (1 Witkin, Cal. Procedure (3d ed. 1985) § 165, p. 192; *Hensley* v. *Eckerhart* (1983) 461 U.S. 424, 433, 437 [76 L.Ed.2d 40, 50, 53, 103 S.Ct. 1933]; see *Los Angeles* v. *Los Angeles-Inyo Farms Co.* (1933) 134 Cal.App. 268, 274 [25 P.2d 224].) "In many cases the trial court will be aware of the nature and extent of the attorney's services from its observation of the trial proceedings and the pretrial and discovery proceedings reflected in the file." (*In re Marriage of Cueva, supra,* 86 Cal.App.3d at p. 301, fn. omitted.) However, in the absence of such crucial information as the number of hours worked, billing rates, types of issues dealt with and appearances made on the client's behalf, the trial court is placed in the position of simply guessing at the actual value of the attorney's services. That practice is unacceptable and cannot be the basis for an award of fees.

Some federal courts require that an attorney maintain and submit "contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney" in support of an application for attorney fees. (*Nat. Ass'n of Concerned Vets.* v. *Sec. of Defense* (1982) 675 F.2d 1319, 1327; *New York Ass'n for Retarded Child.* v. *Carey* (1983) 711 F.2d 1136, 1147-1148.) This requirement was developed in cases involving civil rights litigation, but submission of contemporaneous time records is now mandatory in all cases involving an application to the court for attorney fees arising in that federal jurisdiction. (See *Johnson* v. *United States* (S.D. N.Y. 1984) 578 F.Supp. 226, 227 [review of jeopardy tax assessment]; *Birmingham* v. *Sogen-Swiss Intern. Corp. Retirement* (1983) 718 F.2d 515, 523-524 [suit for retirement benefits]; *Kaye* v. *Fast Food Operators, Inc.* (S.D. N.Y. 1983) 99 F.R.D. 161, 165 [class action securities fraud litigation].)

In California, an attorney need not submit contemporaneous time records in order to recover attorney fees, although an attorney's failure to keep books of account and other records has been found to be a basis for disciplinary action. (*Dixon* v. *State Bar* (1985) 39 Cal.3d 335, 344 [216 Cal.Rptr. 432, 702 P.2d 590].) Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records. (*Glendora Community Redevelopment Agency* v. *Demeter* (1984) 155 Cal.App.3d 465, 470-471, 478 [202 Cal.Rptr. 389]; *Margolin* v. *Regional Planning Com.* (1982) 134 Cal.App.3d 999, 1006 [185 Cal.Rptr. 145].)

The only evidence presented in support of the motion for attorney fees was the attorney's request for a flat fee for "services rendered." No documents, such as billing or time records, were submitted to the court, nor was an attempt made to explain, in more than general terms, the extent of

services rendered to the client. At oral argument, defendant's attorney admitted he determined the fee to be paid by his clients based on a general "feeling" about the case and the amount of work done on the client's behalf, and not by referring to detailed time or billing records.

This "evidence" is not sufficient to support the award of $40,000 in attorney fees. In addition, the trial court did not prepare a statement of its reasons for awarding that amount. In the absence of a complete record, both supporting and explaining the award of fees, our review of the trial court's exercise of discretion is hindered. (See *In re Marriage of Cueva, supra,* 86 Cal.App.3d at p. 301, fn. 5.) Accordingly, the award of $40,000 in attorney fees is reversed and the case remanded for a rehearing of the attorney fees issue.

The judgment is affirmed except for the award of attorney fees which is remanded for rehearing on that issue.

King, J., and White, J.,* concurred.

Haning, J., deeming himself disqualified, did not participate.

A petition for a rehearing was denied July 15, 1986, and appellant's petition for review by the Supreme Court was denied August 27, 1986.

---

*Assigned by the Chairperson of the Judicial Council.