Filed 2/28/19

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| FERNANDO MARTINEZ, | |
| Plaintiff and Appellant, | G054840 |
| v. | (Super. Ct. No. 30-2012-614932) |
| STEPHEN STRATTON O'HARA et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Carmen Luege, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.) Affirmed.

Offices of Pavone & Fonner, Benjamin Pavone and William Mond for Plaintiff and Appellant.

AlvaradoSmith, William M. Hensley and Marc D. Alexander for Defendants and Respondents.

\* \* \*

---

[*]  Pursuant to California Rules of Court, rule 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of the Background section and parts I., II., III., and IV. of the Discussion section.

INTRODUCTION

In the published portion of this opinion, we conclude that the plaintiff's attorney committed misconduct on appeal, including manifesting gender bias, and we report him to the State Bar. In the unpublished portion of this opinion, we affirm the trial court's denial of a motion for attorney fees.

Following the termination of his employment, Fernando Martinez (plaintiff) sued Stephen Stratton O'Hara (O'Hara), Career Solution and Candidate Acquisitions (CSCA), O'Hara Family Trust, OCRE, Inc., Professional Realty Council, Inc., and Pacific Valley Realty, Inc. (collectively defendants) alleging five employment-related claims. Plaintiff's wage claim was resolved before trial and his fraud claim was dismissed when the trial court granted defendants' motion for nonsuit. A jury returned a verdict awarding a total of $8,080 in damages on the claim for sexual harassment in violation of the California Fair Employment and Housing Act (FEHA). Following a bench trial of plaintiff's remaining claims seeking an injunction for unfair advertising and unfair business practices, the trial court found in favor of defendants.

Plaintiff filed a motion under Government Code section 12965, subdivision (b) and Labor Code section 218.5, requesting an award of attorney fees in the amount of $133,887 for "litigating the case" plus $12,747 for fees incurred in bringing the motion itself, for a total attorney fee award of $146,634.

Plaintiff appeals from the trial court's order denying his motion for attorney fees. We affirm because the trial court properly exercised its discretion under section 1033, subdivision (a) of the Code of Civil Procedure and followed the legal principles set forth in *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970 (*Chavez*).

As explained in section V of the Discussion *post*, as required by the California Code of Judicial Ethics, we are reporting plaintiff's attorney Benjamin Pavone to the California State Bar for manifesting gender bias. The notice of appeal signed by Mr. Pavone on behalf of plaintiff referred to the ruling of the female judicial officer as

2

"succubustic." A succubus is defined as a demon assuming female form which has sexual intercourse with men in their sleep. We publish this portion of the opinion to make the point that gender bias by an attorney appearing before us will not be tolerated, period.

We also report Mr. Pavone to the State Bar for the statement in the notice of appeal suggesting the trial court attempted to thwart service of the signed judgment on plaintiff in an effort to evade appellate review and statements in the appellate briefs he signed on behalf of plaintiff accusing the judicial officer who ruled on the motion for attorney fees of *intentionally* refusing to follow the law. None of these serious charges is supported by any evidence.

BACKGROUND

Our record includes the transcript of the final day of the five-day jury trial and the transcript of the hearing on the motion for attorney fees only. We therefore begin our background section by restating the Facts and Procedural Background section of the prior unpublished opinion issued in this case in *Martinez v. Stephen Stratton O'Hara* (June 25, 2015, G050710).

"In 2012, plaintiff, a high school graduate and college student working at a McDonald's restaurant, posted his resume on Monster.com, an Internet-based employment search service. O'Hara sent plaintiff an e-mail, stating he represented CSCA, 'a Talent Acquisition firm specializing in the real estate sector of the Financial Services Industry' (boldface omitted), which had 'been retained by a large company . . . seeking recent Business & Communications Majors for Interns and Full Time careers.' O'Hara believed plaintiff 'might be a fit for the company we represent' based on his Monster.com resume. He invited plaintiff to visit CSCA's Web site and apply if interested. Both the e-mail and the Web site provided anticipated starting salaries of $35,000, as an intern or a licensed agent in real estate.

3

"Plaintiff read the Web site and completed the online application. After a few days, he called the number on the CSCA Web site and spoke to O'Hara. O'Hara told plaintiff his "scores were absolutely . . . off the charts." O'Hara had plaintiff complete an assessment test and asked plaintiff to send a resume and photograph of himself to O'Hara's personal e-mail. Upon receiving the results of the assessment test, O'Hara called plaintiff to tell him how impressed he was with them and that he wanted to explain them to him in person. They ultimately decided to meet at O'Hara's home, about 60 miles from where plaintiff was living, where they talked about plaintiff's various options.

"O'Hara told plaintiff one option was to be placed with a broker, which was the position plaintiff had applied for. The downfall to that was it entailed a six-month process during which plaintiff would have to pay for and obtain a real estate license and go through a training program for which there were associated costs. The second option was for plaintiff to be part of CSCA, but that would not be up and running until 2013. The final option was for plaintiff to become O'Hara's assistant. O'Hara offered plaintiff the position because plaintiff said he needed money.

"Plaintiff accepted the job as O'Hara's personal assistant for $1,500 a month. They initially agreed plaintiff would work at O'Hara's home from 9:00 a.m. to 5:00 p.m., but the hours were flexible to allow plaintiff to work around his schedule at McDonald's. Later, O'Hara pressured plaintiff into quitting his job at McDonald's. Plaintiff agreed to their business relationship because he believed he would be enrolled in training programs that would no longer require him to go to O'Hara's home.

"Around the third week of plaintiff's employment, O'Hara made sexual advances towards plaintiff and invited him to go with him on a gay cruise. Shortly thereafter, plaintiff wanted to end the personal relationship but still work for O'Hara. The employment relationship nevertheless ended as well.

"Before giving plaintiff his final paycheck, O'Hara required plaintiff to sign a release agreeing: (1) it was plaintiff's personal decision to quit his job at

4

McDonald's; (2) he had worked as an independent contractor; (3) he had resigned; (4) although he was owed $750 at the time of resignation, cash advances reduced the amount to $100; and (5) in exchange for a payment of $525, plaintiff would (a) keep confidential all business and personal information related to O'Hara, a violation of which 'would cause extreme exposure to various legal claims' and prosecution 'to the fullest extent of the law,' and (b) 'waive any past, present or future claim for damages' and fully release O'Hara and his companies from any claim or liability.

"Plaintiff sued defendants in November 2012, asserting individual causes of action for rape (later dismissed), sexual harassment, fraud, Labor Code violations, and wrongful termination. After several amendments, plaintiff filed a fifth amended (operative) complaint in August 2013, alleging causes of actions for fraud, false advertising, unfair business practices,[1] Labor Code violations, sexual harassment, and a request for alter ego findings. The cause of action for false advertising contained class action allegations that had not been pled in the prior complaints. Defendants moved to strike the class allegations from the operative complaint because plaintiff had not filed a motion for class certification and the allegations were insufficient.

"Plaintiff moved for class certification in November 2013 . . . . [¶] . . . [¶] The court denied the motion for class certification, based in part on the lack of an ascertainable class or a representative with claims typical of the class. The denial of the certification motion rendered defendants' motion to strike moot."[2]

Plaintiff appealed the trial court's ruling, and this court affirmed the order denying class certification. The parties agreed to bifurcate the trial on plaintiff's claims

---

[1] Consistent with plaintiff's references in the opening brief in the instant appeal, we refer to plaintiff's claims for false advertising and unfair business practices together as the claims for injunctive relief.

[2] The complex case designation that had been assigned to the case when the class action allegations were included in plaintiff's operative pleading was removed after the trial court denied the motion for class certification.

by first trying the sexual harassment and fraud causes of action to a jury and then trying the claims for injunctive relief to the court.[3]

In March 2016, plaintiff's sexual harassment and fraud claims were tried to the jury. After plaintiff testified that he had not relied on the alleged false representations underlying his fraud claim, the trial court granted O'Hara's motion for nonsuit as to the fraud cause of action. The jury found O'Hara liable on the sexual harassment claim and awarded plaintiff damages in the total amount of $8,080, consisting of $1,080 in economic damages and $7,000 in noneconomic damages. The jury found O'Hara's conduct was not committed with malice, oppression, or fraud.

Plaintiff's claims for injunctive relief were thereafter tried to the court. The trial court concluded plaintiff lacked standing to maintain a claim for violation of Business and Professions Code section 17200. The court's minute order stated: "Under Section 17204, the statute states that to have standing a person must have 'suffered injury in fact and has lost money or property as a result of the unfair competition.' Plaintiff's position that he suffered economic injury by traveling from Escondido, CA to Orange County for a job interview with defendant, based on false representations in the website, does not establish standing. Driving 60 minutes from one town to another for a job interview does not equate with economic injury."

Even if plaintiff had standing to pursue claims under the unfair competition law, the trial court denied his request for an injunction "because plaintiff failed to prove

---

[3] In his claim for Labor Code violations, plaintiff alleged defendants failed to timely pay him his final wages upon the termination of his employment in violation of Labor Code section 203. As explained in plaintiff's motion for attorney fees, on January 18, 2013 (about two months after this lawsuit was filed in November 2012), defendants paid plaintiff all claimed owed wages ($750) and a portion of the waiting time penalties provided for in Labor Code section 203, by making a total payment of $975 to plaintiff. Defendants paid plaintiff the remaining amount of claimed waiting time penalties (in an amount of $1,300) shortly before trial. Thus, plaintiff's claim for Labor Code violations was not tried.

that the public currently has access to the CSCA website. The general rule is that 'injunctive relief will be denied if at the time of the order or judgment, there is no reasonable probability that the past acts complained of will recur, i.e., where the defendant voluntarily discontinues the wrongful conduct.' [Citation.] In other words, to get an injunction, plaintiff must show there is a threat that the wrongful conduct will continue. The court finds plaintiff's evidence did not meet that burden."[4]

Plaintiff filed a motion for an order awarding prevailing party attorney fees and costs pursuant to Labor Code section 218.5 and Government Code section 12965, subdivision (b), on the ground he was the prevailing party as to his Labor Code violations claim and his sexual harassment claim; he also argued he "prevailed as a practical matter on two injunctive claims." In his motion, plaintiff asserted: "In light of this mixed bag of outcomes, he has apportioned as fee shifting work 1/3 of the total time spent on this case. He requests his attorney's straight hourly rate—no multiplier and no interest or other adjustment for a delay in compensation for what is now four years—as his way of displaying proper, fractional apportionment and reasonable billing judgment." Plaintiff sought attorney fees in the amount of $133,887 for litigating the case plus $12,747 in fees to prepare the motion itself. Plaintiff also requested an award of costs and submitted a memorandum of costs seeking a total costs award of $15,966.94.

Defendants filed an opposition to plaintiff's motion for attorney fees and request for costs.

---

[4] Plaintiff has not challenged the jury's findings or the court's bench trial findings on liability or damages in this appeal.

The trial court awarded plaintiff total costs in the amount of $7,044.93[5] but denied his motion for attorney fees. Judgment was entered in favor of plaintiff and against defendants[6] in the amount of $8,080 plus $7,044.93 in costs. Plaintiff appealed.

## DISCUSSION

### I.

#### STANDARD OF REVIEW

""""The standard of review on issues of attorney's fees and costs is abuse of discretion. The trial court's decision will only be disturbed when there is no substantial evidence to support the trial court's findings or when there has been a miscarriage of justice. If the trial court has made no findings, the reviewing court will infer all findings necessary to support the judgment and then examine the record to see if the findings are based on substantial evidence."""" (*Pellegrino v. Robert Half Internat., Inc.* (2010) 182 Cal.App.4th 278, 287-288.)

### II.

#### GENERAL LEGAL PRINCIPLES

"'Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding.' (Code Civ. Proc., § 1032, subd. (b).) The litigation costs that the prevailing party may recover include attorney fees when recovery of such fees is authorized by statute. (*Id.*, § 1033.5, subd. (a)(10)(B).)" (*Chavez, supra,* 47 Cal.4th at p. 975.)

---

[5] Although in his appellate briefing plaintiff expresses disagreement with the court's costs award and includes in the conclusion of his opening brief that the court reverse the judgment and remand the case for a redetermination of fees and costs, plaintiff has forfeited any challenge to the costs award by failing to provide any meaningful analysis and citation to legal authority in support of any such challenge.

[6] Before trial, plaintiff and defendants stipulated that "O'Hara's companies would be co-extensively liable with his liability."

8

The general rule that the prevailing party may recover costs, including attorney fees, when authorized by statute, has exceptions. One such exception applies when "'the prevailing party recovers a judgment that could have been rendered in a limited civil case,' and the action was not brought as a limited civil case," in which case "Code of Civil Procedure section 1033's subdivision (a) . . . states that '[c]osts or any portion of claimed costs shall be as determined by the court in its discretion.'" (*Chavez, supra,* 47 Cal.4th at pp. 975-976, fn. omitted; see *Carter v. Cohen* (2010) 188 Cal.App.4th 1038, 1053 [Code of Civil Procedure section 1033, subdivision (a) makes an award of costs discretionary in unlimited civil cases when the judgment awarded an amount of damages that is less than what may be recovered in a limited civil case].)

The limit of what may be recovered in a limited civil case is codified at Code of Civil Procedure section 85, which provides in relevant part: "An action or special proceeding shall be treated as a limited civil case if all of the following conditions are satisfied, and, notwithstanding any statute that classifies an action or special proceeding as a limited civil case, an action or special proceeding shall not be treated as a limited civil case unless all of the following conditions are satisfied: [¶] (a) The amount in controversy does not exceed twenty-five thousand dollars ($25,000)." The California Supreme Court has expressly rejected the argument that Code of Civil Procedure section 1033, subdivision (a) does not apply to a motion for prevailing party attorney fees in the context of a FEHA claim, stating: "[S]ection 1033(a), interpreted according to its plain meaning, gives a trial court discretion to deny attorney fees to a plaintiff who prevails on a FEHA claim but recovers an amount that could have been recovered in a limited civil case. In exercising that discretion, however, the trial court must give due consideration to the policies and objectives of the FEHA in general and of its attorney fee provision in particular." (*Chavez, supra,* 47 Cal.4th at p. 976.) The parties do not cite any authority, and we have found none, suggesting that Code of Civil Procedure section 1033,

9

subdivision (a) does not similarly apply to motions for attorney fees brought under Labor Code section 218.5.

III.

THE TRIAL COURT DID NOT ERR BY DENYING PLAINTIFF ATTORNEY FEES UNDER FEHA.

In his opening brief, plaintiff argues the trial court erroneously denied him prevailing party attorney fees under FEHA after the jury awarded him $8,080 in damages on his FEHA claim. For the reasons we explain, plaintiff has failed to show the trial court's ruling constituted an abuse of discretion.

Plaintiff's motion for attorney fees as it related to his FEHA claim was based on Government Code section 12965, subdivision (b), which provides in part: "In civil actions brought under this section, the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs, including expert witness fees." The California Supreme Court has held that "in a FEHA action a trial court should ordinarily award attorney fees to a prevailing plaintiff *unless special circumstances would render a fee award unjust*." (*Chavez, supra*, 47 Cal.4th at p. 976, italics added.)

As discussed *ante*, a FEHA "plaintiff's failure to take advantage of time- and cost-saving features of the limited civil case procedures may be considered a special circumstance that would render a fee award [in favor of a plaintiff] unjust." (*Chavez, supra,* 47 Cal.4th at p. 986.) Also in the FEHA context, "'[a] fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether.'" (*Id.* at p. 990.)

The trial court explained its ruling denying plaintiff's motion for attorney fees in its minute order: "Having spent time reviewing the complete record in this case, including the class certification portion of the litigation, the court finds that plaintiff over litigated this case. The factual similarities between the instant matter and the facts in the California Supreme Court decision *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970,

10

are striking.  In *Chavez*, the plaintiff filed an action alleging several FEHA claims.  Following a five-day trial, the jury awarded Chavez $1,500 in economic damages and $10,000 in noneconomic damages.  Chavez then sought attorney fees in excess of $400,000 which he subsequently amended to approximately $870,000.  In *Chavez*, the Supreme Court concluded that 'in light of plaintiff's minimal success and grossly inflated attorney's fee request, the trial court did not abuse its discretion in denying attorney fees.' [Citation.]  In reaching this decision, the court noted that Chavez's success on a single FEHA claim did not have 'any broad public impact or result[] in significant benefit to anyone other than himself.'  [Citation.]

"Here, the jury awarded plaintiff Martinez $1,080 in economic damages and $7,000 in noneconomic damages.  Plaintiff Martinez's request for attorney's fees is based on a calculation of approximately $414,407 in fees and plaintiff is asking the court to award more than one third of that sum.  The court, however, finds the figure of $414,407 very unreliable.  Plaintiff's counsel admitted during the hearing that he had not maintained contemporaneous billing hours and that he based the legal fee calculation on a reconstruction of the amount of hours plaintiff's counsel believes he spent working on the case.  Although block billing is not invalid per se, its use may undercut the credibility for the fee application. [Citation.]  In this particular case, the reconstructed time sheets plaintiff submitted show that on one specific day counsel billed 25 hours of work performed.  On multiple days counsel billed in excess of 15 hours of work performed per day.  These entries raise serious questions about the accuracy of counsel's alleged reconstruction of the time he spent working on this case.  Taking into consideration the unreliability of the figures provided with the nominal damages the jury awarded, asking the court for more than $160,000 in legal fees, seems as excessive as the legal fees plaintiff requested in the *Chavez* case.  See also *Serrano v. Unruh* (1982) 32 Cal.3d 621 ('a fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether').  Moreover, like in *Chavez*, this is

11

not a claim that had a broad public impact or resulted in significant benefit to anyone other than plaintiff Martinez, further justifying the court's decision to deny plaintiff attorney's fees.

"In addition, the court notes that plaintiff in this case was spectacularly unsuccessful. The court's records make clear that plaintiff engaged in fruitless litigation, with many adverse court rulings that underscored the weaknesses in plaintiff's case. Most of the litigation had nothing to do with the FEHA claim which probably explains why the evidence plaintiff presented at trial in support of the FEHA claim was so sparse. Most of the entries in counsel's time sheet have nothing to do with this one FEHA claim. A large portion of the entries relate to the false advertising claim and the unsuccessful efforts to obtain class certification.

"The weakest evidence plaintiff presented at trial was on the issue of damages. The wrongful conduct at issue occurred over a matter of weeks, which made proving significant economic damages almost impossible. At trial, counsel asked the jury to return damages in excess of $500,000, yet failed to present evidence in support of such [an] outlandish figure. Like in *Chavez*, plaintiff's counsel in this case should have determined long before trial that realistically the case was worth no more than $25,000 and should have pursued the case as a civil limited matter.

"Following *Chavez*, the court denies plaintiff's request for attorney fees."

Plaintiff has failed to show the trial court's determination that plaintiff's request for attorney fees was excessive—a special circumstance recognized in *Chavez* in which a prevailing plaintiff may be properly denied attorney fees under FEHA[7]—

---

[7] Plaintiff argues that in denying attorney fees on his FEHA claim, the trial court did not apply the correct legal analysis provided in *Chavez*. He argues "the trial court analyzed the fee issue under the assumption that it had unfettered discretion to award (or not award) attorney's fees, by citing the statute." The court's minute order does not support plaintiff's argument. The court's ruling with regard to the FEHA claim was based on the court's determination that two separate special circumstances to the general rule that a

12

constituted an abuse of discretion. Our record, even as augmented, does not contain the entire trial court record. It includes the transcript of only one day of the five-day trial in this case; consequently, we are unable to review the strength of the evidence presented at trial to prove plaintiff's FEHA claim and in particular, the strength of the evidence supporting his request for damages. It appears that our record does not include several of the minute orders issued by the trial court recording its rulings on various law and motion matters throughout the case. The trial court, however, had the entire record before it and expressly stated in its minute order that it had reviewed the entire record before ruling on the motion for attorney fees.

The trial court found plaintiff's counsel's time records, filed in support of the motion, unreliable. At the hearing on the motion, plaintiff's counsel admitted his office did not keep contemporaneous time and billing records throughout about half of the four-year litigation and that time records submitted in support of the motion for attorney fees were retrospectively created "at the end of the case." Contemporaneous records are not required to support a motion for attorney fees. (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375; *Martino v. Denevi* (1986) 182 Cal.App.3d 553, 559.) Without such time records or billing statements, however, a motion for attorney fees must be supported by declarations explaining, "in more than general terms, the extent of services rendered to the client." (*Martino v. Denevi, supra,* at pp. 559-560.)

The trial court did not abuse its discretion in concluding plaintiff's counsel's declaration was insufficient to support the motion for attorney fees based, in significant part, on retrospectively created time and billing records. Plaintiff's counsel

prevailing FEHA plaintiff is awarded attorney fees applied—that plaintiff sought an excessive amount of fees and plaintiff recovered less than what could be recovered in a limited civil case and should have prosecuted the case as a limited civil case. (See *Chavez, supra,* 47 Cal.4th at pp. 986, 990.) Such a determination effectively acknowledges the general rule.

filed a declaration in support of the attorney fees motion claiming that at least 969.6 billable hours were spent working on the case on behalf of plaintiff. In his declaration, he defended his failure to show which portion of those hours was for services related to the litigation of the FEHA claim: "Complicating the analysis is that the time to investigate and litigate the sex claim, the wage claim, the fraud claim and the injunctive claims is difficult to separate. The evidence is overlapping." Instead of providing more specific information and analysis, counsel's declaration proposed: "As I see it, and in attempting to truly be reasonable, I have apportioned the case into thirds: a third of the time for the sex/wage claims, a third for the 17200/17500 causes and a third for the fraud claim. A third of the total fee turns out to be $133,887, as reflected by a computation I ran aggregating the hours at the respective hourly rates, plus $12,747 to prepare these moving papers." There is no explanation as to why this is a reasonable allocation other than that, in counsel's unsubstantiated opinion, the amount of time reflected in that fee amount is what is "generally necessary for any case to run the length of the system."

Plaintiff further argues that while reconstructed billing records are less accurate than those created contemporaneously, his counsel's proposal to cut his bill by two-thirds was more than adequate to compensate for any margin of error that might be attributed to the produced records. In support of his argument, plaintiff claims to have prevailed "on some level" on five of his six claims. Not true. The trial court ruled against plaintiff on the claims for injunctive relief. Plaintiff claims he prevailed to some degree as to the claims for injunctive relief because defendants agreed to take down the Web site upon which the claims were based. Plaintiff has failed to identify any order or injunction compelling defendants' action now or in the future. Plaintiff's fraud claim was dismissed during trial. His wage claim was resolved before trial; a mere $1,300 in penalties remained at stake from the early days of the litigation until the eve of trial as to that claim. Plaintiff has not challenged the outcome of any of these causes of action on

14

appeal.[8]  The trial court was well within its discretion to reject plaintiff's requested one-third of a total amount of claimed incurred attorney fees the court found unreliable in the first place, based on an inflated view of plaintiff's litigation success.

Plaintiff also argues that the trial court's ruling reflects a punishment for plaintiff's counsel's personal and conclusory attacks on one of the trial judges, who presided earlier in the case and had previously issued sanctions against plaintiff, during the hearing on the motion for attorney fees.  Plaintiff states in his opening brief that the trial court's denial of the motion for attorney fees constituted "a mindlessly one-sided ruling—a ruling founded in advocacy rather than analysis if ever there was one—and littered with legal errors, as they always are."

We have reviewed the transcript of the hearing on the motion for attorney fees and the court's minute order containing its ruling and find no support for plaintiff's assertion.  At the hearing, plaintiff's counsel complained to the trial court that he had been improperly sanctioned by the prior trial court judge, stating that trial judge "was off in a crazy place.  Thank God he's gone now.  No offense."  The trial court explained to counsel that while the court did not need counsel to agree whether the prior trial judge was a great judge, "we have to show, you know, some level of respect for the judicial process."  The court further stated it "underst[ood] [counsel's] passion" but attacking the prior trial judge's abilities "is not a very persuasive way of addressing that."  Plaintiff's argument is without any support in the record.

---

[8]  In his opening brief, plaintiff objects to the trial court's characterization in the minute order of the prosecution of his claims as "spectacularly unsuccessful."  The trial court's comment appears to have been rooted in an overview of the lengthy litigation of multiple claims (four years) which indisputably included a failed class action bid, an unsuccessful appeal, an unsuccessful writ petition, and a bifurcated trial, culminating in a modest judgment of $8,080 in favor of plaintiff and the payoff of $1,300 in waiting time penalties.  Given that procedural history, the trial court's comment was reasonable.

15

In sum, the record supports the trial court's application of the special circumstance of an excessive request for attorney fees and thus supports the court's exercise of discretion in denying prevailing party attorney fees on the FEHA claim. The record, however, also shows the trial court's exercise of discretion in denying the motion was supported by the existence of another special circumstance—that plaintiff recovered less than the maximum recoverable in a limited civil case.

In *Chavez*, the Supreme Court explained that in exercising its discretion under Code of Civil Procedure section 1033, subdivision (a) to grant or deny attorney fees to a plaintiff who has recovered FEHA damages in an amount that could have been recovered in a limited case, "the trial court must give due consideration to the policies and objectives of the FEHA and determine whether denying attorney fees, in whole or in part, is consistent with those policies and objectives." (*Chavez, supra,* 47 Cal.4th at p. 986.)

The Supreme Court in *Chavez* continued: "In determining whether a FEHA action should have been brought as a limited civil case, the trial court should consider FEHA's underlying policy of encouraging the assertion of meritorious FEHA claims, and it should evaluate the entire case in light of the information that was known, or should have been known, by the plaintiff's attorney when the action was initially filed and as it developed thereafter. [Citation.] In making this evaluation, the trial court should exercise caution to avoid 'hindsight bias,' which is the recognized tendency for individuals to overestimate or exaggerate the predictability of events after they have occurred. [Citations.] If, based on the available information, the plaintiff's attorney might reasonably have expected to be able to present substantial evidence supporting a FEHA damages award in an amount exceeding the damages limit (now $ 25,000) for a limited civil case, or if the plaintiff's attorney might reasonably have concluded that the action could not be fairly and effectively litigated as a limited civil case, the trial court should not deny attorney fees merely because, for example, the trier of fact ultimately

16

rejected the testimony of the plaintiff's witnesses or failed to draw inferences that were reasonably supported, although not compelled, by the plaintiff's evidence. But if, to the contrary, the trial court is firmly persuaded that the plaintiff's attorney had no reasonable basis to anticipate a FEHA damages award in excess of the amount recoverable in a limited civil case, and also that the action could have been fairly and effectively litigated as a limited civil case, the trial court may deny, in whole or in part, the plaintiff's claim for attorney fees and other litigation costs." (*Chavez, supra,* 47 Cal.4th at pp. 986-987.)

Again, our review of the strength of plaintiff's FEHA claim, which the trial court viewed as quite weak, is impeded by the limited trial record that has been designated on appeal. Our record does not suggest the court's assessment to have been erroneous. Plaintiff argues he could not have pursued this action as a limited civil case because his claim for injunctive relief could not be tried in that way. Plaintiff's claims, however, were soundly rejected by the court. Plaintiff's total recovery in this case (even including the amounts received from defendants on his wage claim) measured less than half the maximum amount of recovery available in a limited civil case. Plaintiff has failed to show the court's findings regarding the applicability of special circumstances supporting the denial of prevailing party attorney fees on the FEHA claim constituted an abuse of discretion.

IV.

THE TRIAL COURT DID NOT PREJUDICIALLY ERR BY DENYING THE MOTION FOR ATTORNEY FEES UNDER LABOR CODE SECTION 218.5.

Plaintiff challenges the trial court's denial of his motion for prevailing party attorney fees under Labor Code section 218.5, as to plaintiff's claim defendants owed him final wages and waiting time penalties under Labor Code section 203. Labor Code section 203, subdivision (a) provides: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the

17

employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

Labor Code section 218.5, subdivision (a) authorizes the recovery of prevailing party attorney fees in wage claim cases as follows:  "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action.  However, if the prevailing party in the court action is not an employee, attorney's fees and costs shall be awarded pursuant to this section only if the court finds that the employee brought the court action in bad faith."

The trial court denied plaintiff's motion for attorney fees with respect to his Labor Code section 203 claim, stating in its minute order:  "It is undisputed that long before this case came before this court for trial, defendant had paid plaintiff all his wages. Thus, the issue of wages was not before the court when the case proceeded to trial and plaintiff cannot be considered the prevailing party on the wages claim.  [¶] The only issue that remained related to the wages claim was a waiting time penalty claim in the sum of $1,300.  Before the commencement of the trial, the parties represented that days earlier, defendant paid plaintiff an additional $1,300 to resolve the issue of waiting time penalties and thereby eliminate[d] the issue from trial.  Under Labor Code Section 203, waiting time penalties are not wages.  See *Ling v. P.F. Chang's China Bistro, Inc.* (2016) 245 Cal.App.4th 1242, 1261.  Accordingly, defendant's decision to pay the waiting time penalties does not make plaintiff a prevailing party pursuant to Section 2[18].5."

Plaintiff argues the trial court erred in concluding he was not eligible as a prevailing party to recover attorney fees and further argues the trial court misapplied *Ling v. P.F. Chang's China Bistro, Inc.* in determining that waiting time penalties do not constitute "wages" within the meaning of Labor Code section 218.5.

18

We do not need to address plaintiff's legal arguments because even if the trial court so erred, on this record, any such error was harmless. Plaintiff's wage claim was based on the allegation he had not been paid his final wages ($750) and that the delay triggered liability for the waiting time penalty of 30 days' wages ($1,500). Of the amount of wage and penalties combined, $1,300 remained unpaid to plaintiff until the eve of the jury trial. Our record does not show there was much to litigate regarding the amount of wages accrued or the rate of wages plaintiff had earned during his employment that would be factored into the calculation of the waiting time penalty of 30 days' wages. Although in the complaint plaintiff alleged he was misclassified as an independent contractor, citing Labor Code section 2699.3, he has not sought overtime compensation or any other recovery related to that alleged misclassification.

The trial court found plaintiff's billing records to be unreliable. Plaintiff fails to explain in his appellate briefing how much of the fees generated over four years of litigation is properly attributed to the prosecution of this rather straightforward wage claim. Furthermore, as discussed *ante*, plaintiff's overall recovery (including amounts he received to resolve the wage claim) was less than half the amount recoverable in a limited civil case, vesting the trial court with discretion to deny even a prevailing party attorney fees claim under Labor Code section 218.5. For all of these reasons, even if the trial court erred in its reasoning for denying the motion, any such error was harmless.

V.

MISCONDUCT BY PLAINTIFF'S COUNSEL PAVONE

Business and Professions Code section 6068, subdivision (b) provides that it is the duty of an attorney to "maintain the respect due to the courts of justice and judicial officers." Disrespectful statements made in court papers are grounds for attorney discipline and/or contempt. (See *Ramirez v. State Bar* (1980) 28 Cal.3d 402 [attorney suspended for brief falsely accusing appellate justices of acting illegally as a result of their alleged bias in favor of financially strong opposing party]; *In re Koven*

19

(2005) 134 Cal.App.4th 262, 270-277 [attorney's brief falsely accusing appellate court of "deliberate judicial dishonesty" resulted in contempt proceedings, monetary fine, and referral to the California State Bar].)

Canon 3B(6) of the California Code of Judicial Ethics provides: "A judge shall require lawyers in proceedings before the judge to refrain from (a) manifesting, by words or conduct, bias, prejudice, or harassment based upon race, sex, gender, gender identity, gender expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation, or (b) sexual harassment against parties, witnesses, counsel, or others. This canon does not preclude legitimate advocacy when race, sex, gender, gender identity, gender expression, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, political affiliation, or other similar factors are issues in the proceeding."

Canon 3D(2) of the California Code of Judicial Ethics provides: "Whenever a judge has personal knowledge, or concludes in a judicial decision, that a lawyer has committed misconduct or has violated any provision of the Rules of Professional Conduct, the judge shall take appropriate corrective action, which may include reporting the violation to the appropriate authority." The advisory committee commentary accompanying canon 3D(2) instructs that California law imposes on judges mandatory reporting requirements to the State Bar regarding lawyer misconduct.

A.

*The Notice of Appeal*

Instead of using the Judicial Council notice of appeal form, plaintiff's counsel Pavone signed the plaintiff's notice of appeal which stated in full: "Pursuant to Code of Civil Procedure section 904.1 et seq., Plaintiff Fernando Martinez hereby appeals from the lower court's disgraceful order dated November 30, 2016, as incorporated into a reported judgment dated February 21, 2017, and [as] such, technically appeals from that judgment. The ruling's succubustic adoption of the defense position,

20

and resulting validation of the defendant's pseudohermaphroditic misconduct, prompt one to entertain reverse peristalsis unto its four corners.

"Evidence of the docket entry reflecting the judgment is attached hereto as Exhibit A.

"Plaintiff never actually received a copy of a signed judgment, though a stipulated judgment was prepared for the commission court's signature, as it apparently cynically attempted to suppress notice of the judgment in order to thwart review."

Webster's Third New International Dictionary (2002) at page 2282, column 3, defines the term "succubus" as "**1:** a demon assuming female form to have sexual intercourse with men in their sleep—compare incubus  **2:** demon, fiend  **3:** strumpet, whore."  (Capitalization omitted.)

B.

*Plaintiff's Appellate Briefs*

Every day appellate courts evaluate litigants' contentions of trial court error regarding issues of fact and law.  Plaintiff's appellate briefs, signed by Pavone, contain many statements, however, that cannot be fairly characterized as acts of zealous advocacy in an effort to challenge the ruling on plaintiff's motion for attorney fees.  Instead, plaintiff's appellate briefs repeatedly accuse the judicial officer who ruled on that motion of *intentionally* refusing to follow and apply the law.  There is no support in the record for such a serious charge.  Examples of such statements include that the judicial officer (1) "made *intentional* mistakes at the knowing expense of legal accuracy in service to a higher agenda of ruling against [plaintiff] for his perceived political offenses"; (2) displayed "mindless antipathy toward [plaintiff]" having "*intentionally* analyzed a quantitative issue . . . by resorting to citation to qualitative features"; (3) "should have resisted the desire (but did not) to champion [another judicial officer] because it came at the expense of the integrity of her ruling"; and (4) "*intentionally* decided to let her master

21

for this motion be not the law, but an adversarial agenda to rule against one party regardless of it." (Italics added.)

C.

*Conclusions*

The notice of appeal's reference to the ruling of the female judicial officer, from which plaintiff appealed, as "succubustic" constitutes a demonstration "by words or conduct, bias, prejudice, or harassment based upon . . . gender" and thus qualifies as reportable misconduct.[9]

The statements in plaintiff's appellate briefs accusing the trial court of intentionally refusing to follow the law, as detailed *ante*, and the statement in the notice of appeal suggesting the trial court tried to prevent plaintiff from receiving notice of the signed judgment in an effort to thwart appellate review of its decision, also made without any support in the record, constitute reportable misconduct. We further note that many of the words and phrases in the notice of appeal have no place in a court filing. We cannot understand why plaintiff's counsel thought it wise, much less persuasive, to include the words "disgraceful," "pseudohermaphroditic misconduct," or "reverse peristalsis" in the notice of appeal.

---

[9] We note rule 8.4.1 of the California Rules of Professional Conduct prohibits an attorney, in his or her representation of a client, from unlawfully harassing or unlawfully discriminating against persons on the basis of protected characteristics including gender. Plaintiff's notice of appeal was filed in April 2017, and thus before rule 8.4.1 became effective on November 1, 2018. Had rule 8.4.1 been in effect at the time the notice of appeal was filed, Pavone's reference to the judicial officer's ruling as "succubustic" would have constituted a violation of that rule as well as misconduct under section 6068 of the Business and Professions Code.

22

DISPOSITION

The judgment is affirmed.  Respondents shall recover costs on appeal.

Pursuant to canon 3D(2) of the California Code of Judicial Ethics, we hereby report Attorney Benjamin Pavone, counsel for plaintiff and appellant Fernando Martinez, to the State Bar of California for his misconduct as described in part V of this opinion's Discussion.  The clerk of this court is directed to send copies of this opinion, the notice of appeal filed in this court on April 14, 2017, plaintiff's appellate opening brief, and plaintiff's appellate reply brief to the State Bar of California.  The clerk is further directed to send a copy of this opinion to Attorney Benjamin Pavone, State Bar No. 181826, at his address listed by the State Bar.

FYBEL, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.

23